IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN A. AMBRIZ, | § | |
| *Plaintiff*, | § | |
| vs. | § | 5-20-CV-00727-RBF |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY[1]; | § | |
| *Defendant*. | § | |

**ORDER**

This Order concerns Plaintiff John A. Ambriz's request for judicial review of the administrative denial of his application for disability-insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), this action was assigned for disposition following all parties' consent to U.S. Magistrate Judge jurisdiction. *See* Dkt. Nos. 11, 18, 20. On November 30, 2021, the Court heard oral argument in this matter. Ambriz and the Commissioner appeared through counsel of record.

After considering the parties' briefing, their arguments at the November 30 hearing, the record of the administrative proceeding, and the applicable authority, the Court will **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi—the current Acting Commissioner of the Social Security Administration—for named Defendant Andrew Saul.

**Factual and Procedural Background**

Plaintiff Ambriz filed his application for disability-insurance benefits in January 2018, alleging a disability onset date of August 18, 2016. Tr. 353-56.[2] Ambriz's claims were initially denied, *id.* 253-65, and so was his request for reconsideration, *id.* 268-80. He then requested and received an administrative hearing. *Id.* 296-340. Ambriz and his attorney attended the hearing, and at it Ambriz and a vocational expert testified. *Id.* 228-52.

The vocational expert testified that a hypothetical individual of Ambriz's age, education, and experience with the following abilities and limitations couldn't perform Ambriz's past relevant work:

> Capable of performing light work as defined by 20 C.F.R. § 404.1567(b) except the individual can only engage in all portions of activities on an occasional basis and must have no exposure to concentrated pulmonary irritants.

*Id.* 248. The vocational expert also testified that the same individual could perform the following jobs existing in significant numbers in the national economy: bench assembler (DOT # 706.684-022), electronics worker (DOT # 726.687-010), and folder in a clothes manufacturer or laundry (DOT #369.687-018). *Id.*

Then the vocational expert addressed a second hypothetical, which included non-exertional mental limitations requiring that the individual "retains the ability to understand, remember, and carry out simple job instructions on work-related tasks." *Id.* 248-49. To this hypothetical, the expert returned the same list of available jobs. Aside from asking the vocational expert whether his testimony was consistent with the DOT—to which the vocational expert said,

---

[2] There is a minor discrepancy regarding the date Ambriz sought benefits. Ambriz's Application for Disability Insurance Benefits, *id.* 353-56, states that he completed his application on January 23, 2018. The ALJ, however, asserted that Ambriz filed his application on January 15, 2018. *See id.* 195. This one-week differential isn't material here.

"yes"—the Administrative Law Judge (ALJ) didn't explore this topic further at the hearing. *See id.*

On cross-examination of the expert, Ambriz's attorney briefly inquired about the second hypothetical:

> Q: So correct that in your answering to the hypothetical, the hypothetical individual cannot do detailed work?
>
> A: That's right. I testified to simple.

*Id.* After this initial inquiry, Ambriz's attorney didn't explore the matter further at the hearing.

But in a post-hearing brief dated the day of the hearing, Ambriz formally objected to the vocational expert's testimony. Specifically, Ambriz's objection urged that

> Every single one of the occupations identified [by the expert] was a [DOT] reasoning level 2 or 3 occupation. On cross-examination the vocational expert clarified that an individual with limitations like you [the ALJ] had identified would be unable to carry out detailed written and oral instructions. All reasoning level 2 and reasoning level 3 occupations require the ability to do such tasks. Therefore, either all of the occupatons were eliminated via cross-examination, or at the very least, there is a conflict between the vocational expert's testimony and the contents of the Dictionary of Occupational Titles as proven through that cross.

*Id.* 216.

Approximately two months after the hearing, on July 10, 2019, the ALJ issued a written decision denying Ambriz's claim for benefits. *See id.* 195-209. The ALJ found that Ambriz met the insured-status requirements of the Social Security Act, and the ALJ then applied the five-step sequential analysis required by the regulations. *See id.* 197. After moving through steps one through three, and before reaching step four, the ALJ found Ambriz had the physical and mental residual functional capacity to:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b) except that he is limited to occasional postural activities; no exposure to concentrated pulmonary irritants; and retains the capacity to understand, remember, and carry out simple job instructions and work related tasks.

*Id.* 202-06. At step four, after considering the residual-functional-capacity determination and the testimony of the vocational expert, the ALJ concluded that Ambriz couldn't perform his past relevant work as actually or generally performed. *Id.* 207.

At step five, relying on the vocational expert's testimony, the ALJ found—considering Ambriz's age, educational factors, prior work experience, and residual functional capacity—Ambriz could perform the three jobs identified by the vocational expert at the hearing. *Id.* 208. The ALJ didn't acknowledge or rule on Ambriz's objection to the vocational expert's testimony. Nor did the ALJ explain how the vocational expert's testimony didn't conflict with the DOT, as Ambriz contended in his post-hearing objection. Instead, the ALJ stated:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, and with the expert's years of training and experience (Exhibit B16E; and Vocational Expert Testimony).

*Id.* 208. Accordingly, the ALJ determined that Ambriz is not disabled for purposes of the Act and therefore not entitled to receive benefits. *Id.* 208-09.

The Appeals Council denied Ambriz's subsequent request for review. *Id.* 1-5. Ambriz then sought judicial review. Dkt. No. 1.

**Analysis**

Remand is required in connection with Ambriz's first point of error, which takes issue with the ALJ's step-five findings. A second point of error—involving whether the ALJ failed to include all established mental limitations in formulating Ambriz's residual functional capacity—need not be addressed at this time.

A.     **Claimants on Occasion Raise "Conflicts" between Expert Testimony and DOT Job Descriptions or Limitations Imposed.**

The Court's present inquiry begins with the ALJ's failure to acknowledge or address explicitly Claimant Ambriz's cross-examination of the vocational expert and resulting post-hearing objection. Those matters, in Ambriz's view, raised a "conflict" between the limitations imposed by the ALJ's hypothetical along with the job descriptions in the DOT, on one hand, and the vocational-expert's testimony, on the other. The issue occurred at step five, where the Commissioner must bear the burden of proof to show other gainful employment is available to a claimant. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner "adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).

The Commissioner's step-five burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or, as in the present case, through expert vocational testimony or other similar evidence. *Id.* at 1304. "The value of a vocational expert is that [the expert] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (quotations omitted). A vocational expert's opinion can take precedence over job descriptions in the DOT:

> An ALJ may in appropriate cases give more weight to a Vocational Expert's testimony than to the DOT. And that rule makes sense considering the DOT provides only standardized job information, whereas [vocation expert] testimony is tailored to an individual claimant's work skills and limitations as relayed by the ALJ through hypothetical questions.

*Dell v. Berryhill*, No. 18-756-JWD-EWD, 2019 WL 4666353, at *12 (M.D. La. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4655905 (M.D. La. Sept. 24, 2019), *aff'd sub*

*nom*. 807 F. App'x 385 (5th Cir. 2020). And here because Ambriz suffers from additional limitations that render the Medical-Vocational Guidelines inapplicable, the ALJ relied on testimony from a vocational expert.

    **1.**    *Vocational-expert testimony sometimes appears incongruous with job descriptions in the DOT or with the ALJ's hypothetical.* As in the present case, vocational-expert testimony can give rise to confusion when it doesn't jibe with provisions in the DOT or even the limitations imposed by the ALJ's hypothetical questions. The expert testimony here spawned a point of error for Ambriz because, according to Ambriz, the expert identified jobs with descriptions in the DOT that don't line up with the ALJ's limitations on Ambriz's ability to work. There is a sizeable body of cases involving this or a closely related type of incongruity, which is often referred to as a "conflict."

A genesis of the underlying issue in these "conflict" cases is the fact that the Social Security regulations and the DOT use similar wording but different scales to address, among other things, the ability of a claimant to understand, remember, and concentrate:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . [to] apprehend the most abstruse classes of concepts" at level six).

*Cochran v. Astrue*, No. SA-10-CV-0183-FB-NN, 2011 WL 13323989, at *4 (W.D. Tex. Jan. 31, 2011), *report and recommendation adopted*, 2011 WL 13324011 (W.D. Tex. Mar. 23, 2011) (quotations omitted). "Given their differing degrees of specificity, it is foreseeable (if not inevitable) that a [vocational expert's] opinion of a claimant's ability to do other work may conflict with the DOT's requirements for particular jobs." *Dell*, 2019 WL 4666353, at *12.

Further muddying the waters, not all jobs necessarily require the full reasoning level set forth in the DOT, as the following discussion from the Eighth Circuit reflects:

> [T]he [DOT] Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category. A claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range. The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.

*Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (internal quotation marks, cites, and brackets omitted).

**2.**     *The "conflict" nomenclature used in these cases isn't always helpful.* Frequently, courts and parties describe these issues as involving different types or species of "conflicts," as I have previously discussed.

> The Fifth Circuit has talked about these situations as presenting the possibility for various types of conflicts in the record evidence, which have been labeled as "direct and obvious" or actual on one hand, or "tangential," "implied or indirect" on the other.

*Martin v. Saul*, No. 5-19-CV-00573-FB-RBF, 2020 WL 4382133, at *4 (W.D. Tex. Jul. 30, 2020), *report and recommendation adopted* (Aug. 17, 2020). The regulations, for their part, talk about "apparent" conflicts.[3] *See* SSR 00-4P, 2000 WL 1898704 ("When there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict.").

---

[3] The selection of the term, "apparent" is unfortunate. A leading dictionary defines "apparent" as, "open to view" and "clear or manifest to the understanding." *Apparent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/apparent (last visited Jan. 27, 2022). But "apparent" is also "commonly used" to mean, "based on the appearance of things, as opposed to what is definitely true. Something described as apparent in this way has not been confirmed or proven." *Apparent*, DICTIONARY.COM, https://www.dictionary.com/browse/apparent (last visited Jan. 27, 2022).

And as I have also previously discussed, "[t]he variety of labels attached to various 'conflicts' in this setting is confusing and not particularly helpful in close cases." *Martin*, 2020 WL 4382133, at *4. Indeed, how in some close cases "one draws a meaningful distinction between or differentiates in any kind of principled way between direct, tangential, apparent, indirect, implied, and obvious conflicts is not entirely clear." *Id*. We do know that "when a tangential or 'implied or indirect conflict' is presented, the Fifth Circuit's rule is 'that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.'" *Id*. (quoting *Carey v. Apfel*, 230 F.3d at 145). And as far as the regulations are concerned, "apparent" conflicts, whatever they are, require development and an explanation from the ALJ. *See* SSR 00-4P, 2000 WL 1898704.

Many cases focus on the fact that there is not necessarily a conflict presented, even though the terminology used might make it seem otherwise. For example, "[a] reasoning level of 2," many such judicial decisions conclude, "is *consistent with* a limitation to simple and routine tasks." *Trest v. Colvin*, No. 3:14-CV-302-CWR-FKB, 2015 WL 5224477, at *4 (S.D. Miss. Sept. 8, 2015) (emphasis added). In *Trest*, the vocational expert clarified that although the jobs identified are described in the DOT at level 2 and 3 reasoning, none of the jobs required following detailed instructions, which is typically associated with level 2 reasoning. *Id*. at *4. In fact, the vocational expert explained that each of the jobs he identified would only require an individual to carry out "simple, one-, two-step instructions with little or no variation." *Id.*[4] Thus,

---

[4] *Trest* cites a number of other decisions in support of this reasoning. They involve similar considerations. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) ("[T]he Commissioner's argument is well-taken that a limitation of 'simple one or two-step tasks on a repetitive basis where concentration really isn't required' does not necessarily preclude ability to perform jobs with reasoning levels of 2 or higher."); *Smith v. Colvin*, No. 313-CV-1884-N, 2014 WL 1407437, at *6 (N.D. Tex. Mar. 24, 2014), *report and recommendation adopted*, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (finding "no direct or apparent conflict

courts frequently find no conflict sufficient to warrant reversal where limitations to simple work or following simple one- and two-step instructions are coupled with jobs identified by expert testimony that might—*but don't necessarily*—require carrying out detailed instructions.[5] As one might infer from this discussion, the failure to develop at the agency level whether the expert's testimony necessarily conflicts with the DOT or merely could be inconsistent with it is a key feature in these cases. In other words, forfeiture—sometimes called, "waiver"—is present in many of these cases.

       **3.**    *"Conflict" arguments brought by claimants often fail in federal court when the argument looks forfeited.* The Fifth Circuit has provided the following guidance for "implied" or "unexplained" conflicts:

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the

---

between an [residual functional capacity] limiting a plaintiff to 'simple' instructions and a [vocation expert's] testimony that a plaintiff may perform work at a reasoning level of two"); *Melton v. Astrue*, 2:11CV157–SAA, 2012 WL 1004786, at *2-3 (N.D. Miss. Mar. 26, 2012) (limitation to "simple, routine, repetitive tasks involving only simple work related decisions" consistent with performance of level-two-reasoning work); *Fletcher v. Astrue*, 5:09–CV–070–BG ECF, 2010 WL 1644877, at *4 (N.D. Tex. Mar. 31, 2010) (observing, "[c]ourts have acknowledged that the ability to perform non-complex work is consistent with reasoning level two").

[5] *See, e.g.*, *Moore*, 623 F.3d at 604 (no direct conflict between "carrying out simple job instructions" for "simple, routine and repetitive work activity" and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate); *Smith*, 2014 WL 1407437, at *6 ("A number of district courts within the Fifth Circuit, as well as appellate and district courts outside the Fifth Circuit, have already determined that there is no direct or apparent conflict between an RFC limiting a plaintiff to "simple" instructions and a VE's testimony that a plaintiff may perform work at a reasoning level of two."); *Shrawna D.B. v. Berryhill*, No. 3:18-CV-1014-K (BH), 2019 WL 2124898, at *20 (N.D. Tex. Apr. 22, 2019) (collecting authorities for same proposition); *Castillo v. Colvin*, No. H-12-3512, 2014 WL 897798, at *14 (S.D. Tex. Mar. 6, 2014) (collecting authorities for proposition that "[a] reasoning level of two has repeatedly been found to be consistent with the reasoning ability to understanding [sic] simple instructions and perform simple tasks."); *Ealy v. Colvin*, No. 3:13CV409TSL-JCG, 2014 WL 3928193, at *3 (S.D. Miss. Aug. 12, 2014) (same with respect to level 2 reasoning and limitations to "simple, routine, repetitive work").

conflict was not deemed sufficient to merit [ ] development in the administrative hearing.

*Carey*, 230 F.3d at 146-47. Thus, mere "implied" or "unexplained" conflicts that are not "develop[ed]" at the administrative level cannot be invoked for the first time in federal court as a basis to reverse a decision of the Commissioner. As a result, even though in some cases there *could or could not* be a conflict between the limitations imposed and the jobs identified—depending on the details of the limitations imposed or the actual jobs at issue—the issue is undeveloped when first raised in federal court and so fails as a ground for reversal and remand. *See, e.g.*, *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) ("[A] possibility exists that some jobs requiring reasoning level 2 or higher may conflict with plaintiff's specific limitations. But such conflict is not inevitable. As such, it is only arguable, not obvious or direct. Again, the point cannot be entertained in this proceeding because it was not developed in the adversarial context at the administrative hearing.") (emphasis removed); *Ealy v. Colvin*, No. 3:13CV409TSL-JCG, 2014 WL 3928193, at *3 (S.D. Miss. Aug. 12, 2014) (noting, "plaintiff's failure to raise the issue of the alleged conflict at the administrative hearing deprived the ALJ from addressing and exploring it" and labeling the argument "waived").

But recently the Supreme Court in *Carr v. Saul* cautioned against forfeitures arising from non-adversarial agency proceedings, particularly where no statute or regulation obligates a claimant to raise an issue during administrative proceedings. 141 S. Ct. 1352 (2021). As the Court in *Carr* explained, "the reasons for a court to require issue exhaustion are much weaker when an administrative proceeding is not adversarial." *Id.* at 1359 (quotations omitted). The Court further explained the importance of the non-adversarial nature of agency proceedings in the Social Security context:

> [T]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings, where administrative proceedings are inquisitorial

10

> rather than adversarial and the regulations expressly provide that the SSA conduct the administrative review process in an informal, nonadversary manner and assures claimants that the SSA will consider at each step of the review process any information you present as well as all the information in our records.

*Id.* (quotations and brackets omitted). *Carr* also recognized that there's no clear rule for determining when an issue could or could not be forfeited in a Social Security setting. Rather, several considerations are at play, including whether: (1) the administrative proceedings were adversarial enough to support the "analogy to judicial proceedings" that undergirds judicially created issue-exhaustion requirements; (2) the agency adjudicator is suited to address the challenge; and (3) raising the challenge at the administrative level would be futile. *Id.* at 1360-61 (quotations omitted).

    **4.** *If a conflict is present on the face of the record or raised before the ALJ, the ALJ ought to address and resolve it.* One possible take-away from *Carr* is that step-five issues-—like these purported "conflicts"—don't ever need to be raised at the agency level to be explored in federal court. But such a conclusion gives little weight the second and third considerations in *Carr*. Moreover, adopting this approach would create tension with *Carey v. Apfel*, which highlights concerns that claimants might lie behind the log or invent new arguments only after the ALJ has ruled. 230 F.3d at 146-47.

  A better take-away from *Carr* is that because an ALJ is particularly qualified and positioned to explore any possible issues with the vocational expert's testimony, and further because raising such issues with the ALJ would not typically be futile, such issues ought to be brought to the ALJ's attention and addressed once they are. And the ALJ ought to resolve them. In other words, if a "conflict" issue is raised before the ALJ or the issue is apparent on the face of the record, the ALJ should address it, as the regulations demand. As I recently discussed:

> On the one hand, claimants shouldn't be permitted to Monday-morning quarterback the vocational expert's testimony to flyspeck attenuated, insignificant, or hyper-technical "conflicts" that are then raised for the first time in federal court. But on the other hand, claimants can't be expected to police every aspect of an interchange between a vocational expert and an ALJ that occurs while the ALJ performs his or her obligation to identify available jobs in the economy and ensure that they are consistent with a claimant's residual functional capacity. Imagine for a moment what preserving error in these circumstances would look like, if the Commissioner's hardline forfeiture rule were adopted. Counsel for claimants, or claimants themselves if proceeding pro se, would be forced to cross-examine vocational experts on every hypothetical entertained, and in doing so cross reference the voluminous provisions of the DOT with every job mentioned by the experts. Keep in mind that an ALJ might rattle off 3 or even 5 or 6 hypotheticals to a vocational expert. In response to each, the vocational expert provides a list of jobs, often with varying requirements and demands. All of this, of course, would need to be done on the fly.

*Martin*, 2020 WL 4382133, at *7.

Expecting that "conflict" issues ought to be resolved by the ALJ when they are brought to light is one thing, but what happens when a conflict issue wasn't explored in administrative proceedings either at or after the hearing? That situation likely presents the outer edge of the intersection between *Carr v. Saul* and *Carey v. Apfel*, at least in "conflict" cases. That situation, however, is not presented in this case where the "conflict" issue was raised in the administrative proceedings.

### B.     Ambriz Raised a Conflict Issue, Yet the ALJ Didn't Explicitly Address It.

Here, the ALJ posed a hypothetical to the vocational expert that included the mental limitation of "understand[ing], remember[ing] and carry[ing] out *simple* job instructions and tasks." Tr. 248-49 (emphasis added). That hypothetical, therefore, used the lingo of the regulations when speaking about "simple" instructions. In response to the hypothetical, the vocational expert identified three jobs classified at DOT reasoning level 2, which involves—in the lingo of the DOT—the ability to "[a]pply commonsense understanding to carry-out *detailed* .

. . . *instructions*." Dictionary of Occupational Titles, 1991 WL 688702 (4th ed. 1991) (emphasis added).

Thus, on *direct* examination the vocational expert provided testimony that didn't directly conflict with the DOT, notwithstanding Ambriz's contention to the contrary.[6] And if this were the extent of the vocational expert's testimony and evidence on the topic, many courts would likely conclude that an ALJ has no obligation to explore the issue further. *See, e.g.*, *Carey*, 230 F.3d at 145-47 ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."). Parties, however, should be wary of inferring a hard-and-fast rule here because even slight changes in the facts and evidence can point to a different outcome. And such is the case here, based on information gleaned on cross-examination and fleshed out further in a post-hearing brief.

Ambriz's attorney on *cross-examination* first broached the topic of a possible tension or conflict.[7] Indeed, the vocational expert's testimony elicited on cross indicated that the hypothetical individual *could not perform detailed work* at all but could perform *only* simple work instead. And the vocational expert here didn't explain and wasn't asked whether all, none, or some of the three specific jobs identified did or did not require full Level 2 reasoning. This raises the Court's radar for several reasons.

*First*, as mentioned, an ALJ bears the burden at step five to show other gainful employment available to the claimant. *See Greenspan*, 38 F.3d at 236. Step five, in this regard at

---

[6] *See, e.g.*, *Moore*, 623 F.3d at 604; *Smith*, 2014 WL 1407437, at *6; *Shrawna*, 2019 WL 2124898, at * 20.

[7] Noteably, all the cases relied on by the Commissioner to support her assertion that no conflict ever exists under these circumstances don't deal with situations such as this—where the conflict was made apparent at some point, either via cross-examination or in a post-hearing brief, by the claimant.

least, looks more inquisitorial than adversarial because the Commissioner, not the claimant, bears the burden of developing the other-gainful-employment issue. *See Carr*, 141 S. Ct. at 1358-59. The regulations, *second*, provide that an ALJ must (1) ask the vocational expert if the evidence he has provided conflicts with the DOT; (2) obtain a reasonable explanation for any "apparent" conflict; and (3) resolve any apparent conflicts before relying on a vocational expert's testimony, explaining this resolution in the written decision. *See* SSR 00-4p, 2000 WL 1898704. An ALJ is further obligated under agency policy to rule on any objections lodged by the claimant,[8] although courts disagree regarding whether an ALJ is so obligated if objections aren't adequately explored on cross-examination and appear instead only in an unsolicited post-hearing brief.[9] At the same time, "[a]n ALJ's discretion to choose between conflicting evidence from a Vocational Expert and the DOT is not unfettered." *Dell*, 2019 WL 4666353, at *12. "When a direct and obvious conflict exists, and the ALJ fails to explain or resolve the conflict, the [vocational expert's] testimony cannot constitute substantial evidence at Step 5, warranting reversal and remand." *Id.* (citing *Carey*, 230 F.3d at 147). Here, although a "direct and obvious"

---

[8] *See* Social Security Administration's Hearings, Appeal's and Litigation Law Manual ("HALLEX") I-2-6-74(B), 1993 WL 751902 (effective Jun. 16, 2016) ("[T]he ALJ must (on the record) . . . [r]ule on any objection(s). The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision."). "While HALLEX does not carry the authority of law . . . where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quotations omitted).

[9] *Compare Mitchell v. Saul*, No. CV 19-1445, 2020 WL 1877910, at *17 (E.D. La. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1874068 (E.D. La. Apr. 15, 2020) ("HALLEX I-2-6-74(B) and [the later-enacted] HALLEX I-2-5-30 require that the ALJ rule on objections to the vocational expert's testimony, and to the extent post-hearing objections are otherwise appropriate, this requirement may extend to post-hearing objections.") *with Postel v. Saul*, No. 18-CV-2017-MAR, 2019 WL 4720990, at *22 (N.D. Iowa Sept. 26, 2019) (HALLEX's requirement that an ALJ rule on an objection doesn't apply to post-hearing objections) & *Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) (absent a "clear" agreement from the ALJ to hold the record open, ALJ has no obligation to address unsolicited post-hearing objections to a vocational expert's testimony).

conflict wasn't noted in the hearing, an objection was lodged concerning an identified, albeit potential, conflict.

Although Ambriz's attorney didn't explore the conflict further at the hearing, he did file a formal post-hearing objection[10] that, in the Court's view, invoked the ALJ's obligation to address the issue.[11] Thus, under the Commissioner's own policy, the ALJ was required to elicit a "reasonable explanation" for the "conflict" and then resolve it. This would require the ALJ to determine whether the expert's testimony warranted reliance despite the information in the DOT, and it would further require the ALJ to explain in the written decision how that issue (*i.e.*, the identified "conflict") was resolved, "irrespective of how the conflict was identified." SR 00-4P. "This requirement is not onerous . . . . Even in these circumstances, where the inconsistency

---

[10] Although some courts have refused to find error in an ALJ's failure to consider post-hearing objections, the courts in those cases were primarily concerned with a "suspect" strategy whereby the claimant's counsel would intentionally withhold evidence at the hearing and then later ambush the ALJ with an objection citing this evidence in a post-hearing brief. *See, e.g.*, *Postel*, 2019 WL 4720990, at *19-21 (outlining this strategy and finding such tactics improper). The record here doesn't reflect that this type of improper strategy was employed. Nor does the Commissioner urge that it was. Indeed, the Commissioner doesn't contend the ALJ had no obligation to address a post-hearing objection but instead argues the ALJ overruled Ambriz's objection by ignoring it.

[11] *See, e.g.*, *Thompson v. Barnhart*, 281 F. Supp. 2d 770, 782-83 (E.D. Pa. 2003) ("[T]he text of [SSR-004-p] makes clear that such a duty [to ask about a potential conflict between the expert's testimony and information provided in the DOT] arises only where a conflict 'has been identified,' or 'where there is an apparent unresolved conflict between the VE evidence and the DOT.'") (quoting SSR 00-4p, brackets omitted, emphasis in original); *cf. Haas v. Barnhart*, 91 F. App'x 942, 948 (5th Cir. 2004) (ALJ didn't commit reversible error by relying on testimony from vocational expert where claimant "had an opportunity to but did not raise the issue of th[e] alleged conflict at the hearing before the ALJ so the ALJ could recognize and explain any potential conflict" rendering the vocational expert's testimony "clear and unchallenged"); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 2006 WL 509393, at *4-5 (6th Cir. 2006) ("Because [the claimant] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."); *Dell*, 2019 WL 4666353, at *12 (explaining that plaintiff's failure to question the vocational expert about an alleged conflict didn't "prompt[] the ALJ to obtain any reasonable explanation for, and explain his resolution of, any alleged conflicts").

between the [vocational expert's]'s testimony and the DOT [may not have been entirely] apparent to the ALJ until after the administrative hearing, []he could have satisfied h[is] duty to develop the record by posing a written interrogatory to the VE." *Fisher v. Colvin*, No. CIV. 12-1933 JNE/LIB, 2014 WL 859157, at *2 (D. Minn. Mar. 5, 2014).

Merely asking the vocational expert at the hearing whether his or her testimony is consistent with the DOT and receiving a positive response without any further explanation, as the ALJ did here, didn't and won't suffice to address this concern. That cursory procedure doesn't even identify or acknowledge the conflict at issue. It also doesn't comply with SSR 004-p, once a significant issue like this requiring further investigation is identified. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018) (statement that vocational expert's testimony was "consistent with the DOT and [his] experience" wasn't sufficient under SSR 004-p because "it did not address whether or why the expert's experience provided a basis to overcome an apparent conflict with the Dictionary").[12] Nor does the ALJ's cursory citation to SSR 004-p suffice, as that explains next to nothing in these circumstances either. *See Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196, at *3 (N.D. Miss. Jul. 27, 2018) ("[E]ven *Carey* required some explanation resolving the conflict"). This is not a situation where certain magic words from an ALJ or a vocational expert will necessarily suffice; the Court is looking for an indication in the record that the ALJ recognized the issue, addressed it with the expert, and provided sounds reasons for the resulting decision.

Because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council," the Court cannot accept post-hoc rationalizations offered by the Commissioner only at oral argument. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.

---

[12] *See also Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196, at *3 (N.D. Miss. Jul. 27, 2018) (similar finding).

2000). Whether and to what extent there might be circumstances presented in a given case to justify the vocational expert adopting a slightly different description for a certain job than the one offered in the DOT is a question best posed to the vocational expert. And the Commissioner cannot speculate as to these circumstances for the first time in federal court after an objection to the vocational expert's testimony was raised but was left unaddressed and unacknowledged.

Ultimately—whether the conflict is categorized as apparent or hypothetical—the Court is charged with affirming those ALJ decisions that are supported by substantial evidence. And under these circumstances, there's an open question, raised by Ambriz via objection, that prevents the Court from finding substantial evidence.[13]

### C. The ALJ's Failure to Resolve the Conflict Prejudiced Ambriz.

Ambriz is not entitled to relief unless he can show prejudice resulting from the alleged error. *See DeLeon v. Barnhart*, 174 Fed. App'x 201, 203 (5th Cir. 2006). Under these circumstances, prejudice is self-evident such that remand is required. There is no way to know on this record whether Ambriz was expected to perform jobs with requirements the ALJ said Ambriz couldn't perform. If the conflict had been explored, the vocational expert might have been able to adequately explain why the jobs were perfectly suitable for Ambriz notwithstanding his limitations. But the vocational expert might also have realized that the jobs were incompatible with Ambriz's limitations. Without some explanation, however, the Court cannot conduct a meaningful review.

---

[13] *See Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) ("A finding based on unreliable [vocational expert] testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated."); *Cf. Nichols v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-0651-G-BF, 2011 WL 2669056, at *7 (N.D. Tex. Jun. 10, 2011), *report and recommendation adopted*, 2011 WL 2669099 (N.D. Tex. Jul.6, 2011*)* ("When a conflict is implied or indirect *and did not undergo adversarial development at the administrative hearing*, the testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (emphasis added and citing *Carey*, 230 F.2d 145-46).

**Conclusion and Recommendation**

For the reasons discussed above, the Commissioner's decision is reversed and this case is remanded so that the ALJ can fully develop the record by identifying and resolving any inconsistencies between the claimant's limitations, the job requirements identified by the vocational expert, and the DOT to determine whether Ambriz is capable of performing work that exists in substantial numbers in the national economy. If necessary, the ALJ should hold another hearing and obtain new vocational expert testimony. In the interests of judicial efficiency, the ALJ should also consider Ambriz's second point of error that has not been addressed in this Order, to the extent it is appropriate.

**IT IS SO ORDERED**.

SIGNED this 23rd day of March, 2022.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE